**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **OWNER-OPERATORS INDEPENDENT** ) | |
| **DRIVERS ASSOCIATION, INC., et al.,** ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | **CAUSE NO. 1:98-cv-0457-SEB-VSS** |
| **v.** ) | **CAUSE NO. 1:98-cv-0458-SEB-VSS** |
| ) | |
| **MAYFLOWER TRANSIT, INC.,** ) | |
| ) | |
| *Defendant*. ) | |

### ENTRY ON PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

This cause is before the Court on Plaintiffs' Motion for Partial Judgment on the Pleadings pursuant to Fed.R.Civ. P. 12(c). Plaintiffs Owner-Operators Independent Drivers Association, Inc. ("OOIDA"), Wood-Chuck Leasing, Inc. ("Wood-Chuck"), Mark Dudgeon ("Dudgeon"), and John Neidig ("Neidig") (collectively, "Plaintiffs" or "owner-operators"), have moved on behalf of themselves and all others similarly situated for judgment on the pleadings as to Defendant Mayflower Transit, Inc.'s ("Mayflower") counterclaims.[1] The motion has been fully briefed, and for the reasons stated herein, the Court **DENIES** Plaintiffs' Motion for Partial Judgment on the Pleadings.

---

[1]We note that at the time of the filing of the instant motion, the named Plaintiffs consisted of OOIDA, Wood-Chuck, Dudgeon and Neidig. Subsequent to the filing of the instant motion, however, William H. Owen and Timothy P. Corwin, Sr. were added as named Plaintiffs. Additionally, Anne Weber-Neidig has been substituted as a named Plaintiff representing the estate of John Neidig.

I. *Introduction.*

This entry concerns two separate class actions, each comprised of approximately one thousand plaintiffs who serve as owner-operators of truck tractors contracted out to Mayflower and/or Mayflower's authorized agents for the purpose of hauling goods nationwide.[2]  Currently, the cases are before the Court on Plaintiffs' Motion for Partial Judgment on the Pleadings as to the counterclaims raised by Mayflower in response to Plaintiffs' First Amended Class Action Complaint for Declaratory and Injunctive Relief and Damages Demand for Jury Trial.  As Plaintiffs have moved for judgment on the pleadings as to the counterclaims raised in response to each of Plaintiffs' pending actions, and the issues between the two cases are sufficiently similar, the Court will consolidate the two pending actions, Cause Numbers 1:98-cv-0457 and -0458, for purposes of ruling upon the instant motion.

II. *Factual Background.*

We have, on numerous previous occasions, outlined the facts and allegations pertinent to these actions, and, therefore, provide merely a brief background summary herein. OOIDA, a class representative in each of the pending actions, serves as a nonprofit association comprised of individuals who own (or otherwise control) truck tractors utilized in transporting property on the nation's highways.  As independent contractors, these individuals, referred to as "owner-

---

[2]The two cases have been consolidated for the purpose of discovery and for the purpose of addressing Mayflower's motion to dismiss, as well as for Plaintiff's motion for class certification.  *Owner-Operator Independent Drivers Ass'n v. Mayflower Transit, Inc.*, 161 F.Supp.2d 948 (S.D.Ind. 2001); *Owner-Operator Independent Drivers Ass'n v. Mayflower Transit, Inc.* 204 F.R.D. 138 (S.D.Ind. 2001).  Additionally, since the filing of this motion by Plaintiffs, the Court, in an effort to promote efficiency, has ruled on numerous motions submitted by the parties by consistently examining the cases jointly and issuing one opinion (per motion) pertaining to both causes of action.  In ruling upon the instant motion, the Court likewise examines the actions jointly.

operators," lease their equipment and hauling services to motor carriers who have been authorized by the Department of Transportation ("DOT") under 49 C.F.R. § 376.2(a) to enter into contracts with shippers for the transport of property.

Individual class members, including named Plaintiffs, are owner-operators who contracted with Mayflower or its authorized agents by entering into written leases pertaining to Mayflower's (or its agents') use of the owner-operators' transport equipment and services. Said leases are regulated by the DOT under its leasing regulations found within 49 C.F.R. Part 376 ("Leasing Regulations") and are governed by federal statute, 49 U.S.C §§ 14102 *et seq*. Mayflower qualifies as an "authorized carrier" under the regulations.[3]  Though many, if not all, of the leases addressed in these actions arose between an owner-operator and an agent of Mayflower, without Mayflower serving as a direct signatory to the lease, federal regulation 49 C.F.R. § 376.12(m) provides protection to owner-operators entering into leases with Mayflower's agents rather than Mayflower directly.  More specifically,  49 C.F.R. § 376.12(m) requires authorized carriers, such as Mayflower, to assume responsibility for the actions of its agents, when said agents have entered into leases on Mayflower's behalf.  The regulation, in effect, serves to protect owner-operators from abuses arising either through the direct actions of the carrier or through the actions of the carrier's agent. Authorized carriers, including Mayflower, are "obligated to ensure that these owners receive all the rights and benefits due an owner under the leasing regulations, especially those set forth in paragraphs (d)-(k) of [§376.12][4]

---

[3] *See Owner-Operator Independent Drivers Ass'n*, 204 F.R.D at 141.

[4]49 C.F.R. §§ 376.12 (d)-(k) set forth specific regulations and duties of the parties as pertain to compensation to be specified in the lease; items to be specified in the lease; payment periods; copies of freight bill and documentation; charge-back items; products, equipment or

. . . regardless of whether the lease for the equipment is directly between the authorized carrier and its agent rather than directly between the authorized carrier and each of these owners."[5]   The responsibility placed upon Mayflower under federal law, therefore, serves as the primary legal basis for Plaintiffs' actions against Mayflower.  Plaintiffs' complaints stem from their allegations that Mayflower, as an authorized carrier, violated the Leasing Regulations either via its own acts or those acts of its agents, and, therefore, is liable under the Leasing Regulations.  Plaintiffs additionally assert breach of contract and conversion claims against Mayflower.

In response to Plaintiffs' complaints, Mayflower asserts various counterclaims against Plaintiffs, and those counterclaims are the focus of Plaintiffs' Motion for Partial Judgment on the Pleadings.  Each counterclaim raised by Mayflower centers on Mayflower's allegation that Plaintiffs, as individual owner-operators, received unjust enrichment when they failed to pay Mayflower and/or its authorized agents amounts due them upon final accounting at the termination or cancellation of the lease agreements.  Mayflower contends that, to its knowledge, each Plaintiff received a final account statement from either Mayflower or its agent(s), yet refused to remit the outstanding account balance, thereby breaching their respective contracts.  Mayflower asserts that Plaintiffs were unjustly enriched as a result of their refusal to pay the accounts stated, and, further, that Mayflower remains entitled to set-off, recoup and/or otherwise recover any outstanding amounts not paid by Plaintiffs at the cessation of the leases.  Plaintiffs rejoin that Mayflower received all monies to which it is entitled and, therefore, lacks standing to raise any counterclaims.  Plaintiffs further assert that if they owe any outstanding amounts, those

---

services from authorized carrier; insurance; and regulations.  *See generally* 49 C.F.R. § 376.12.

[5]*See* 49 C.F.R. § 376.12(m).

amounts belong to the agent(s) rather than to Mayflower, and that any counterclaim is assertable only on behalf of those agents, who are non-parties to the pending actions and have allegedly suffered the financial harm. Plaintiffs adamantly contend that the real parties in interest as to any claims relating to breach of contract, accounts stated, unjust enrichment, set off and/or recoupment are the individual agents of Mayflower who allegedly endured any financial set back as a result of Plaintiffs' purported withholding of payment. Plaintiffs further argue that an inequitable result arises, and due process concerns are implicated, if the Court allows Mayflower to pursue its asserted counterclaims. Plaintiffs, thus, have moved for partial judgment on the pleadings as to Mayflower's counterclaims, alleging that those counterclaims properly belong to Mayflower's agents as the real parties in interest and/or the indispensable parties to the litigation, rather than to Mayflower itself. In the alternative, Plaintiffs maintain that should the Court find Mayflower to be the proper party to assert said counterclaims, Mayflower must defer asserting the counterclaims against individual class members until the class administration stage of this litigation at which time damages will be determined.

III. <em>Legal Analysis.</em>

A.      The Standard for Motion for Judgment on the Pleadings.

The standard for granting a party's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) remains the same as the standard required to grant a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Gustafson v. Jones*, 117 F.3d 1015, 1017 (7th Cir. 1997). In applying this standard in ruling on a motion for judgment on the pleadings, the Seventh Circuit has consistently held that a court must accept as true a complaint's well-pleaded factual allegations and must draw all reasonable

5

inferences in the non-movant's favor.  *See Forseth v. Village of Sussex*, 199 F.3d 363 (7th Cir.

2000); *see also National Fidelity Life Ins. Co. V. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

Further, as previously noted by this Court:

> [T]he motion should not be granted unless it appears beyond doubt that the
> plaintiff cannot prove any facts that would support [her] claim for relief.  The
> purpose of a motion to dismiss is not to decide the merits of the complaint, but
> rather the sufficiency of the complaint. If the facts in the complaint or any
> reasonable inferences drawn therefrom support a claim for which relief can be
> granted, the [d]efendants' motion must be denied.

*West v. Phillips,* 883 F.Supp. 308, 313 (S.D. Ind. 1994) (internal citations omitted).  In

accordance with these standards, we have construed the facts in the light most favorable to

Mayflower.

B.      The Issue of Standing and/or the Real Party in Interest.

Plaintiffs contend that Mayflower lacks standing to bring the counterclaims set forth in

its pleadings and/or is not the real party in interest in regard to those counterclaims.  We begin

our analysis by distinguishing between the requirement of constitutional standing and the real

party in interest doctrine, recognizing that these two concepts give rise to confusion or the

distinctions are otherwise muddied during litigation.   In order to acquire standing to sue, a party

must fulfill three threshold requirements:

> [T]he plaintiff must have suffered an "injury in fact"–an invasion of a legally
> protected interest which is . . . concrete and particularized . . . and . . .  "actual or
> imminent, not 'conjectural' or 'hypothetical'" . . . there must be a causal
> connection between the injury and the conduct complained of–the injury has to be
> "fairly . . . trace[able] to the challenged action of the defendant, and not  . . . th[e]
> result of the independent action of some third party not before the court" . . . and
> it must be "likely," as opposed to merely "speculative," that the injury will be
> "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

In contrast, "the designation of the real party in interest entails identifying the person who possesses the particular right sought to be enforced." *Metal Forming Technologies, Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 435 (S.D.Ind. 2004) (citing *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992)).  Federal Rule of Civil Procedure 17(a) mandates that "[e]very action shall be prosecuted in the name of the real party in interest."  Though "both standing and real party in interest are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits,"[6] the determination of whether a party has standing remains distinctly different from the determination of who serves as the real party in interest in a particular suit.

As Plaintiffs have raised challenges to both Mayflower's standing and its status as the real party in interest to the counterclaims, without clearly distinguishing between the two challenges, the Court addresses each challenge in turn below.

First, in contending that Mayflower lacks standing to assert its counterclaims, Plaintiffs assert that Mayflower suffered no direct injury-in-fact.  Rather, Plaintiffs argue that Mayflower's agent(s) were the ones who incurred the injury, if any.[7]   Mayflower, however, posits that its

---

[6]*Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993) (citing 6A Charles Alan Miller et al., *Federal Practice and Procedure* § 1542 (2d ed. 1990)).

[7] Pls' Br. in Supp. of Mtn. for J. on Pleadings Dismissing Countercls. Belonging to Mayflower's Agents at p. 7, states:

> Mayflower has not been injured by the owner-operators' failure to repay the agents to whom they were leased.  To the contrary, Mayflower bills its agents directly on their agency statements for any amounts owed Mayflower by its agents' owner-operators: the carrier does not wait for the agent to collect from the owner-operator to be reimbursed.  Accordingly, Mayflower has not suffered an

ability to bring the disputed counterclaims stems from the relationship existing between a principal and his agent, and further argues that fairness dictates that the Court view its rights in the same manner it has viewed its liabilities.  Notably, Plaintiffs have, throughout this litigation, repeatedly asserted that Mayflower, as the principal on whose behalf and for whose benefit the leases were executed, assumes liability under the leases for ensuring that owner-operators receive all rights and benefits afforded by the Leasing Regulations.  Mayflower argues in defending its counterclaims that Plaintiffs backpedal in their legal analysis by seeking to sever the link between agent and principal and to differentiate between harm to an agent and harm to a principal, when previously Plaintiffs have maintained that Mayflower's agents contracted on behalf of Mayflower, and that, therefore, the leases entered into by Plaintiffs arose between Plaintiffs and Mayflower itself.  Plaintiffs attempt now to argue, says Mayflower, that the owner-operators were leased *to the agent(s)* (thus trying to displace Mayflower from the contractual relationship), rather than to Mayflower.  Plaintiffs maintain that it is Mayflower that seeks to "have it both ways" by positing the facts in a different light whenever suitable for its purposes.

While the Court acknowledges that both parties have engaged in efforts to rearrange the facts as fresh arguments emerge and needs arise, we view Plaintiffs' newfound perspective on the leasing contracts, seemingly presented solely for purposes of this motion, as somewhat disingenuous.  Plaintiffs' newest version of the facts leaves us unconvinced.  Viewing the facts in the light most favorable to Mayflower for purposes of ruling on this motion, we accept as true the fact that Mayflower served as the party for whose benefit the agents entered into the lease

injury in fact fairly traceable to the Plaintiffs' conduct that would be redressed by a favorable decision on the counterclaims.

agreements and, thus, remains entitled to any compensation or benefits derived from those leases.  If the Court were to adopt Plaintiffs' spin, a clear injustice would result, causing Mayflower to suffer the consequences of a double-edged sword: liability for its agents' actions under the leases entered into on its behalf, without the ability to enforce those very same leases against the owner-operators and pursue its entitlement to the benefits under those contracts. Plaintiffs, in contrast, would reap unjustifiable dual rewards:  the entitlement to pursue their claims against Mayflower based upon its agents' actions, without exposure to liability or accountability for any wrongs in which they themselves may have engaged.  We will not countenance so apparent an inequity.  The Court likewise remains unpersuaded by Plaintiffs' contention that Mayflower endured no harm as a result of the Plaintiffs' failure to "reimburse" Mayflower's agents.  Logic alone dictates that any harm to the agent, whose duty remains to the principal and whose actions are intended to benefit the principal rather than himself, results in harm to the principal, as the principal remains the party to whom the contractual benefits flow and from whom the agent reaps the fruits of his services.[8]  As Mayflower correctly contends, injustice arises when Plaintiffs possess the ability to exploit the leases to their full advantage while avoiding their own obligations under those same leases.

---

[8]In *Weismann*, cited *supra,* a shareholder ("Weismann") brought claims relating to his monetary injuries arising out of the corporation's losses.  Though he served as a shareholder and personal guarantor on the corporation's loans, the Court determined the corporation, rather than Weismann, was the real party in interest to the claims.  The Court stated: "But because Weismann's injuries are derivative,–they derive from the fact that A.H.L. suffered a loss–he is not the real party in interest."  *Weismann*, 12 F.3d at 86.  Likewise, we find that Mayflower's agents' injuries arose derivatively from the overall harm to Mayflower under a contract intended for Mayflower's benefit, and, thus, Mayflower, rather than those agents, serves as the real party in interest to the counterclaims.

9

Plaintiffs' tactic of construing the agent as an independent party in the relationship in order to assert that the agents, in effect, settled Plaintiffs' debt to Mayflower, thus barring Mayflower from pursuing a recovery against Plaintiffs directly, despite the leases' treatment of Plaintiffs as the parties owing obligations to Mayflower, is unavailing.   In essence, Plaintiffs' approach is an attempt to position Mayflower's agents as their own creditors, capable of seeking redress against Plaintiffs, thus creating an independent debtor-creditor relationship between those agents and themselves, rather than acknowledging the role of those agents as mere representatives of Mayflower whose duties to Mayflower restrict their ability to obtain personal gain under contracts intended to benefit Mayflower.  Contrary to Plaintiffs' assertions, the agents' advancements and/or prepayments of expenses to Mayflower likely represent a condition of the principal-agent relationship, which is independent from the relationship and obligations giving rise to the contracts between Mayflower and the owner-operators.  We do not view any advances by the agents to Mayflower as intended to benefit the allegedly delinquent Plaintiffs by releasing them of liability to Mayflower or precluding Mayflower from directly enforcing the lease agreements against Plaintiffs.  The agents' actions and interactions with Mayflower do not diminish or alter the responsibilities of Plaintiffs toward Mayflower or remove Mayflower from the overall contractual relationship that the leases created.

In contesting Mayflower's standing, Plaintiffs further contend that the Court is somehow incapable of rendering a decision favorable to Mayflower that would appropriately redress the alleged injury Mayflower suffered that gave rise to the counterclaim.  Plaintiffs contend that only Mayflower's agents endured harm, and that since Mayflower's agents are not parties to the pending actions, their alleged financial harm cannot be remedied by our judgment.  Again, we

find this argument unconvincing, as it fails to acknowledge the significance of the principal-agent relationship between Mayflower and its agents, and the fact that the agency relationship is separate and distinct from the contractual relationship established by the leasing arrangements entered into between Mayflower and the owner-operators.  In regard to the counterclaims, an outcome favorable to Mayflower would place Mayflower in a position of achieving the intended benefit of the leases, those benefits presumably that provided the incentive for Mayflower initially to authorize its agents to enter into leases on its behalf.  If, in fact, there exists a dispute between Mayflower and its agents as to the agents' entitlement to any or all of the proceeds of a favorable outcome or the agents' entitlement to recoup those monies purportedly advanced to Mayflower, that dispute is independent from the immediate actions and should instead be addressed between the parties to that dispute, namely, Mayflower and its agents.  Similarly, should Mayflower seek indemnification or contribution from its agents for any incurred liabilities arising from those agents' actions, a separate action between Mayflower and its agents presumably remains viable to adequately address any ongoing issues between those parties, and the agents likewise could pursue their right of set-off against Mayflower at that time.

Plaintiffs urge us to accord weight to their contention that the agents retain the ability to seek recourse on their own, yet thus far have chosen not to do so.  Contrary to Plaintiffs' contention, however, this argument seems to us implausible, as the Seventh Circuit, in analyzing whether an agent was an indispensable party to an action, previously has held that "the agent had no personal interest in the contract which he negotiated for the principal." *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 502 (7th Cir. 1980) (citing *Milligan v. Anderson*, 522 F.2d 1202, 1204-05 (10th Cir. 1975)).  We extend this Seventh Circuit ruling that an agent fails to

possess a personal interest in contracts negotiated for its principal to the facts in the instant suits

in which Mayflower's agents entered into contracts on behalf of Mayflower itself, which

approach is also consistent with the Restatement (Second) of Agency § 372(2), and properly

applied to the instant dispute between Mayflower and Plaintiffs.[9]  Restatement (Second) of

Agency § 372(2) states:

> An agent does not have such an interest in a contract as to entitle him to maintain

_____

[9]In analyzing agency issues, we note that neither party has set forth, in any detail, arguments as to the source of law it contends applicable to this motion, despite the fact that Mayflower's counterclaims appear to be based upon breach of contract allegations involving contracts executed in various states nationwide, the scope of those locations remaining unidentified by the parties and unknown to the Court.  While Plaintiffs contend that Mayflower's liability arises under the Leasing Regulations, rather than under common law agency principals, the issue of Mayflower's liability remains distinct from the issue of Mayflower's rights arising out of the principal-agent relationship.  Furthermore, Plaintiffs, contrary to their assertions that common law agency principals do not apply, themselves direct the Court to the Restatement (Second) of Agency ("Restatement") for support of their position.

As the parties have failed to adequately address the appropriate law to be applied in ruling upon the issue of whether Mayflower can properly assert its counterclaims (to the extent that those counterclaims relate to the breach of contract claims), we infer that it is the intention of the parties to apply the law of the forum state, Indiana.  The application of Indiana law remains consistent with Fed.R.Civ.P 17(b), which mandates:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.  In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held....

In applying Indiana law, we note that Indiana courts have often utilized the Restatement in analyzing agency principles, and we see no reason to deviate from that approach in the instant analysis, especially since both parties rely, to some extent, upon the Restatement in making their arguments.  _See generally Celebration Fireworks, Inc. v. Smith_, 727 N.E.2d 450, 453 (Ind. 2000) (relying upon Restatement (Second) of Agency § 229 (1958) when analyzing whether conduct of an employee falls within the scope of his employment); _Oil Supply Co., Inc. v. Hires Parts Service, Inc_., 726 N.E.2d 246, 248-49 (Ind. 2000) (referencing Restatement (Second) of Agency § § 1(1), (4)(3), and 306(2) (1958) when analyzing the agency relationship in general).

an action at law upon it in his own name merely because he is entitled to a portion of the proceeds as compensation for making it or because he is liable for its breach.

In *Clark Advertising Agency, Inc., v. Avco Broadcasting Corp*, 178 Ind. App. 451 (1978), the Indiana Appellate Court addressed the issue of an agent's status under a contract made on behalf of its principal. The Court acknowledged that Restatement (Second) of Agency § 320 implies that an agent is not a party to the contract, while also providing a mechanism of overcoming the implication by relying on custom, usage, and the prior course of dealings between the parties. Restatement (Second) of Agency § 320 provides: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." The commentary to Restatement (Second) of Agency § 320, more specifically at comment (c), states: "The inference that the agent is not a party to the contract may be overcome by proving other facts connected with the transaction." Neither party to the action at bar has asserted that any course of conduct, custom or usage among the parties exists to meet the burden of proof necessary to establish the agents' status as parties to the various leasing contracts. For example, Plaintiffs do not contend that they entered into the leasing agreements solely after receiving assurance that the agents would be liable to them or some other assurance indicating that the Plaintiffs and the agents intended for the agents to serve as parties to the contract. Rather, Plaintiffs attempt to rely upon the direct course of dealing between *Mayflower and its agents*, a course of dealing to which they themselves were not a party. At best, Plaintiffs present a series of convoluted arguments in an apparent last-ditch effort to dilute Mayflower's key role as principal and the clear, intended beneficiary of the contracts entered into by the agents. Plaintiffs' attempts to establish that Mayflower's agents, as opposed

to Mayflower, deserve treatment as the real parties in interest fail to persuade us.  As a result, the

Court concludes that Mayflower, as principal, possesses the rights it seeks to enforce via its

counterclaim(s).

Restatement (Second) of Agency § 180 (1958) provides: "A disclosed or partially

disclosed principal is entitled to all defenses arising out of a transaction between his agent and a

third person.  He is not entitled to defenses which are personal to the agent."  The commentary to

§ 180 clarifies the principal's entitlement to defenses, stating: "[d]efenses to the action arising

out of the transaction itself, such as fraud, misrepresentation, recoupment, breach of condition,

nonperformance, and the like, are available to the principal, as well as any defenses, such as set-

off, which the principal himself may have against the other party."  Restatement § 180, cmt. a

(1958).  The Restatement explicitly confers upon the principal the right to assert any defenses

arising out of the contracts entered into on his behalf.  Though Plaintiffs (and at times

Mayflower) have contended that two separate levels of contracting existed, one arising between

the agents and Plaintiffs and the other arising between Mayflower and those agents, the fact

remains that the agents who contracted with the Plaintiffs *did so on behalf of Mayflower*.

Moreover, at least one of the lease agreements accompanying the pleadings in this case

indisputably identifies the contracting agent as serving as an agent of Mayflower.  *See generally*

Exhibit B attached to First Am. Class Action Compl. for Declaratory and Injunctive Relief and

Damages Demand for Jury Trial.   Thus, the assertion, by either party, that Mayflower's agents

intended to enter into contracts free and clear of Mayflower's interests lacks merit and

Mayflower is not properly viewed as a nonparty to the contracts or anything less than the real

14

party in interest to these actions.[10]   The Indiana Supreme Court, dating as far back as 1880,

_____

[10]The parties present lengthy arguments pertaining to the mutuality requirement imposed upon claims for set-off and the contrasts and similarities between the defense of set-off and that of recoupment.  In analyzing the case law presented by each party, however, the Court finds the cases inapposite and easily distinguishable from the facts of the instant actions.  More specifically, none of the cases cited to by Plaintiffs contemplates the relationship between agent and principal or the rights and duties arising therefrom. While Plaintiffs accurately contend that mutuality is required in order for the right to set-off to exist and that "the remedy of set-off is unavailable where the claims do not involve mutual debts and credits.... 'due to and from the same person in the same capacity,'" the case law presented fails to support their conclusion that mutuality does not exist in regard to claims between Plaintiffs and Mayflower.  *See* Pls. Br.  in Supp. of Mtn. for J. on the Pleadings Dismissing Countercls. Belonging to Mayflower's Agents, p. 5 (internal citations omitted).

Rather, the first of Plaintiffs' "illustrative" cases, an out-of-circuit case, not binding upon this Court, discusses claims existing between two sister corporations and a third-party, rather than a principal and an agent.  *See generally Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 936 F.2d 640 (2d Cir. 1991).  Within *Modern Settings*, there exists no analysis of the principal-agent relationship, nor does there, in fact, exist any relationship comparable to that of principal and agent.  Rather, the set-off issue that required the Second Circuit's consideration was Prudential-Bache Securities' ("Securities") (one of the sister companies) claims that it should be entitled to set-off the amounts due Prudential-Bache Metal Co., Inc. ("Metals") (the other sister company) from the third-party, Modern Settings.  In analyzing the case, the Second Circuit determined that Metals had no liability to Modern Settings, and, further, that while Metals assigned a portion of its claims to Securities, the claims to which the right to set-off would apply were not included within that assignment.  Therefore, the Second Circuit denied Securities' claimed right of set-off.  Clearly, this set of facts remains distinguishable from the facts to be considered by this Court and in no way influences us to accept Plaintiffs' implication that we should likewise deny Mayflower's claimed right of set-off or recoupment.  Mayflower assigned no contract rights to its agents, nor did its agents otherwise acquire rights to enforce the terms of the contract in a name other than that of Mayflower.

Plaintiffs additionally rely upon *Labovitz v. Washington Times Corp*., 172 F.3d 897 (D.C. Cir. 1999), yet another out-of-circuit case providing little, if any, insight as to the determination to be made by us.  In *Labovitz*, Peter and Sharon Labovitz, shareholders of DCI Publishing, Inc. ("DCI"), obtained a judgment against the Washington Times Corporation ("Times") for breach of a contract relating to the Times' intended acquisition of DCI.  The Times, at the time of the litigation, retained a fifty-percent ownership interest in DCI.  In appealing the district court's decision not to consider its claims of set-off, the Times contended that it possessed a right of set-off against Peter Labovitz, in that Peter Labovitz failed to remit mortgage payments to an outside lender and forced DCI to make those payments in his stead.  The Times attempted to rely upon its partial ownership of DCI to assert the right of set-off on DCI's behalf, but the Court failed to

provided a concise and accurate analysis of the rights of principal and agent, stating:

> In the first place, then, the right of agents is subordinate to, and controllable by, their principals.  Wherever the principal, as well as the agent, has a right to maintain a suit upon any contract, made by the latter, he may generally supercede the right of the agent to sue, by suing in his own name.

*Brooks v. Doxey et al.*, 72 Ind. 327, at *3 ( Nov. Term 1880) (internal citations omitted).  Thus, even had we determined that the agents maintained a separate right to sue the Plaintiffs, the principal's right to do so would remain unaltered and the priority right.

C.      The Federal Truth-in-Leasing Regulations.

In our entry dated June 1, 2006, we ruled that Mayflower can be held liable for those acts of its authorized agents found to violate the Leasing Regulations.  We now must examine whether the Leasing Regulations provide Mayflower with any rights against Plaintiffs or, to the contrary, serve as a barrier to Mayflower's pursuit of its asserted counterclaims.  In examining the Leasing Regulations, we find that they provide the protocol for carriers, such as Mayflower,

_____

be persuaded by the Times' arguments and held that the Times and DCI remained separate legal entities. Likewise, we fail to be persuaded that we should disallow Mayflower's counterclaims based upon the reasoning set forth in *Labovitz*, as the circumstances of each case remain markedly different.  *See generally Labovitz*, 172 F.3d 897.

Unfortunately for Mayflower, its cited case law, in large part, fares no better.  Mayflower relies, in large part, upon various cases discussing the guarantor-principal debtor relationship for the proposition that a guarantor is entitled to raise his principal's defenses and/or the notion that a guarantor can only be held liable in an amount equal to that liability to which a principal could be held liable.  Had the instant motion pertained to an agent asserting its principal's counterclaims, Mayflower's designated case law may have been more apposite to our determination.  However, Mayflower's case law provides little guidance to the Court as to the immediate issue, as the Court does not liken the relationship between Mayflower and its agents to that of principal debtor (one who owes an obligation) and guarantor (one who guarantees a debt or otherwise provides security for a debt).

16

to follow when engaging in accounting practices pertaining to deductions and charge-backs. Thus, the Leasing Regulations provide Mayflower with the ability to take specific deductions, provided that proper procedures are followed.  Though the Leasing Regulations, in and of themselves, do not provide the statutory basis for Mayflower to bring its counterclaims before the Court, neither do those regulations impose a roadblock to Mayflower doing so.  Rather, the Leasing Regulations merely address the potential deductions and/or charge-backs to be taken by carriers and provide them with statutory guidance in accounting for those deductions and/or charge-backs, without impact on whether Mayflower can assert counterclaims relating to alleged contractual breaches.

This court remains unpersuaded by Plaintiffs' contentions that the regulations, in effect, preclude Mayflower from asserting counterclaims relating to the financial harm to which the owner-operators allegedly subjected Mayflower's agents.  Plaintiffs contend: "The owner-operators' right to seek compensation for injuries caused in part by its agents' wrongdoing and Mayflower's right to assert the agents' contract claims against the owner-operators are not two sides of the same coin."  Pls' Br. in Supp. of Mtn. for J. on Pleadings Dismissing Countercls. Belonging to Mayflower's Agents at p. 8.  Indeed, these two distinct sets of claims are not two sides of the same coin, but rather are unrelated matters requiring separate analysis by the Court. That is not to say that both rights cannot exist concurrently or that Mayflower maintains no entitlement to bring claims against the owner-operators for harm imposed upon the agents acting on its behalf.

Contrary to Plaintiffs' contentions that "allowing carriers to bring such actions would defeat the purpose of the regulation," the ability of a carrier to seek recourse for impropriety

engaged in by the owner-operator(s), whether said impropriety directly harmed the carrier or the agent acting on the carrier's behalf, remains a critical component of establishing an equitable bargaining relationship.  We, therefore, fail to accept Plaintiffs' implied proposition that the Leasing Regulations were intended to unjustifiably limit the rights of carriers.  At the time of the promulgation of the Leasing Regulations, more specifically 49 C.F.R. § 376.12(m), the Interstate Commerce Commission ("ICC") faced a growing trend of abuse by carriers against owner-operators, which arose as a result of the carriers' utilization of intermediary agents.  *See generally, Lease and Interchange of Vehicles (Leases Involving Carrier Agents)*, 47 Fed. Reg. 28396 (June 30, 1982).  As a result of that trend, the ICC sought to clarify that a carrier could not avoid its obligations to an owner-operator simply by employing an intermediary agent to engage in impropriety on its behalf.  *Id.*  At the time of the promulgation of 49 C.F.R. § 376.12(m), however, the ICC presumably encountered no need to address potential abuse of the carrier-agent relationship by an owner-operator (as opposed to abuse against the owner-operator) or the issue of an owner-operator engaging in impropriety and relying upon the existence of an intermediary agent to shield him from accountability to the carrier directly.  We cannot reasonably conclude that, had that issue been directly before the ICC for its consideration, the ICC would have turned a blind eye to claims involving the owner-operator's abuse of the bargaining relationship or unfair or inequitable conduct by the owner-operator that abused the agency relationship so as to put carriers at an unreasonable disadvantage.  We do not do so either.

Further, we fail to grasp the purported logic of Plaintiffs' argument that the ability of the carrier to bring claims relating to harm endured by its agent under the contract "would allow a

carrier to disregard its agents' violations of Leasing Regulations, then escape their clearly-stated liability for those wrongs by asserting counterclaims which those agents might have, but have never asserted, against owner-operators." Pls' Br. in Supp. of Mtn. for J. on Pleadings Dismissing Countercls. Belonging to Mayflower's Agents at p. 9. As an initial matter, the carrier in no way escapes its "clearly-stated liability" or acts in disregard of its agents' alleged violations of the Leasing Regulations by pleading its counterclaims, as the mere assertion of a counterclaim does not automatically absolve the carrier of liability, but instead may serve to reduce the extent of damages to be imposed. Additionally, as discussed previously, the Court views the carrier, as principal to the leasing agreements, as the proper party, if any, capable of asserting claims against the Plaintiffs for violations of the lease agreements, finding little merit in Plaintiffs' contentions that only the agents retain the right to hold Plaintiffs accountable for any of Plaintiffs' misdeeds under the leases. Again, Plaintiffs, disingenuously in our view, attempt to manipulate the principal-agency relationship when and as suitable to their own purposes, which attempts leave us unconvinced.

As a final point, Plaintiffs fail to take into consideration the fact that Mayflower never asserted that its counterclaims *arose under* the Leasing Regulations or otherwise relied upon the Leasing Regulations in asserting its counterclaims. Rather, Mayflower asserted that the Leasing Regulations contemplate a carrier's ability to take deductions and/or impose charge-backs, and, therefore, setoff and recoupment defenses remain consistent with the regulations.[11] To the extent that the alleged outstanding balances owed Mayflower and/or its agents relate to charge-backs and proper deductions contemplated by the Leasing Regulations, counterclaims arising in

---

[11]Defs.' Mem. in Opp'n To Pls.' Mot. for J. on the Pleadings, p. 9.

relation to those deductions, though not necessarily brought under the Leasing Regulations themselves, presumably remain foreseeable, and Plaintiffs cannot rely upon the Leasing Regulations to shield them from being subjected to such counterclaims.

D.      The Agents as Indispensable Parties.

Both parties raise the issue of whether Mayflower's agents remain indispensable parties to the pending actions.  Plaintiffs initially assert that Mayflower's counterclaims must be dismissed due to its failure to join its agents as indispensable and/or necessary parties. Mayflower issues a return volley, contending that if any obligation existed to join the agents as indispensable parties, that obligation was imposed on Plaintiffs.  In determining what parties may be indispensable to a particular action, the Seventh Circuit relies upon a four-factor balancing test, requiring the Court to consider:

> (1) whether a judgment rendered in the party's absence might be prejudicial to that party or to the existing parties; (2) the extent to which relief can be tailored to avoid prejudice to the party; (3) whether a judgment in the party's absence would be adequate; and (4) whether the plaintiff has an adequate remedy if the action is dismissed.

*Woodring v. Culbertson*, 227 F.R.D. 290 (N.D.Ind. 2005) (citing *U.S. v. Tribal Dev. Corp.*, 100 F.3d 476, 478-79 (7th Cir. 1996) (citing Fed.R.Civ.P. 19(b))).  Furthermore, Federal Rule of Civil Procedure 19(a) requires joinder of a party if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

We do not find that a judgment rendered in the agents' absence will be prejudicial either to those agents or to any existing parties.  As discussed *supra*, the Court has determined that Mayflower, as principal, is the proper party to assert the counterclaims, as a matter of law.  Any continued concerns of Mayflower's agents regarding amounts due them must be addressed between Mayflower and its agents, not between Mayflower's agents and Plaintiffs.  Neither party has pointed to any underlying agreement between Mayflower's agents and Plaintiffs dictating that those agents make advances to Mayflower on behalf of Plaintiffs.  Rather, the advances made by those agents serve as an element of the principal-agent relationship between Mayflower and its agents operating on its behalf.  The agents' abilities to protect their purported interests remain unhindered by any judgment in the pending actions between Mayflower and Plaintiffs. Furthermore, a judgment rendered in the absence of Mayflower's agents likewise fails to prejudice any other party to the action.  Plaintiffs are fully exercising their rights to pursue claims against Mayflower for wrongs against them arising from the leasing arrangements and need not join the agents in order to do so.  Likewise, Mayflower is fully exercising its right to pursue claims against Plaintiffs for wrongs committed by Plaintiffs in violation of the contracts. To deny Mayflower its right to pursue the benefits contemplated under the leases entered into on its behalf, however, *would* likely result in prejudice to Mayflower.

A judgment rendered in the absence of Mayflower's agents would not expose current parties to the litigation to a *substantial risk* of incurring double, multiple and/or inconsistent liabilities.  Any claims between Mayflower and its agents remain separate and distinct from the claims between Mayflower and Plaintiffs.  Mayflower's agents, therefore, cannot attempt to re-litigate or raise claims against Mayflower or Plaintiffs which relate to the leasing agreements

between Plaintiffs and Mayflower.  Rather, any claims asserted by those agents would have to

relate to the agency agreement between Mayflower and the individual agents because those

agreements are separate and apart from the pending litigation and pertain only to Mayflower and

its agents.  Furthermore, Plaintiffs fail to cite any convincing evidence that persuades us that a

judgment rendered in the agents' absence exposes Plaintiffs to double, multiple and/or

inconsistent liabilities.  Plaintiffs concede that Mayflower's agents, to date, have failed to pursue

any claims against them.  Further, Mayflower contends that agents historically have declined to

pursue any such claims.  Many of those agents' claims would by now likely be time-barred and,

more importantly, we would anticipate serious problems regarding those agents' standing to bring

any such claims against Plaintiffs.

E.      The Propriety and Timing of Counterclaims against Class Members.

        Though in this ruling the Court acknowledges Mayflower's entitlement to bring

counterclaims against Plaintiffs arising out of the contracts entered into by Plaintiffs and

Mayflower's agents, our inquiry does not end here.  In addition to disputing Mayflower's

entitlement to bring claims arising out of the contracts entered into by its agents, the parties

dispute the propriety of allowing Mayflower to assert counterclaims against absent class members

and/or the timing of Mayflower's assertion of its counterclaims against class members, whether

named or absent.[12]   Plaintiffs assert that due process concerns will be implicated in the event that

_____

        [12]In addition to its blanket counterclaims asserted against the Plaintiff class as a whole
(Count IV), Mayflower asserts counterclaims against the following named Plaintiffs individually
in Cause Number 1:98-cv-0457: Neidig (whose estate is currently represented by Anne Weber-
Neidig) (Count I), Wood-Chuck (Count II), and Dudgeon (Count III).  Furthermore, Mayflower
asserts counterclaims against Neidig in Cause Number 1:98-cv-0458.  The Court, in examining
the pleadings, finds that Mayflower's counterclaims generally asserted against any and all class
members alleged to owe amounts suffice to include counterclaims, if any, against the recently

22

the Court allows Mayflower to pursue counterclaims against absent class members.  Plaintiffs further contend, seemingly in the alternative, that any counterclaims brought against individual class members (whether named or absent, in the event that the Court finds counterclaims against absent class members to be appropriate), particularly those relating to set-off and the amounts thereof, must be addressed solely during the damages/claims administration proceedings.  Though the counterclaims brought against absent class members are afforded only brief mention in Plaintiffs' initial brief in support of its motion, rather than through detailed argument necessary to adequately address the issue, Plaintiffs elaborate upon these concerns in their reply to Mayflower's opposition brief.  Mayflower, having filed its opposition brief prior to the full-blown presentation of an argument by Plaintiffs regarding the propriety of bringing claims against absent class members and/or the timing thereof, encountered no automatic procedural opportunity to formulate a reply and did not request the Court's permission to file a surreply addressing this issue.   Rather, Mayflower's argument consists solely of its contention that "[n]early every court to have considered this issue has held that a defendant in a class action may reduce its liability by amounts due from individual, absent class members-either by way of counterclaims or affirmative defenses."  Defs.' Mem. in Opp'n to Pls.' Mot. for J. on the Pleadings, p. 12.

We accept Mayflower's proposition that Mayflower possesses a general entitlement to assert its counterclaims against individual class members, whether named or absent.  However, our agreement with that proposition does not entirely resolve the issue before us, as the

_____

substituted and/or added named Plaintiffs to this action before the Court.  Thus, the Court, when referencing the named class members and/or Plaintiffs includes the newly added and/or substituted Plaintiffs within that classification.

appropriate time and/or forum in which those counterclaims must be asserted remain separate inquiries. The named Plaintiffs are clearly parties to the pending actions, and, thus, Mayflower's counterclaims against those individuals are compulsory (as opposed to permissive) and appropriately asserted as part of Mayflower's response to the complaint(s) against it. *See Owner-Operator Independent Drivers Ass'n, Inc., et al. v. Arctic Express, Inc., et al.*, 238 F.Supp.2d 963, 964 (S.D.Ohio 2003). Though Mayflower's counterclaims have been properly asserted, we conclude that the appropriate time to consider said counterclaims arises during the damages, or claims administration, proceedings.[13] Therefore, while allowing the counterclaims against the individual named class members to survive Plaintiffs' instant motion, we shall refrain from considering said counterclaims and/or determining damages recoverable by each party until the claims administration stage.

In contrast to our determination that named class members serve as parties to the actions, we conclude that the absent class members are not parties to the current actions.[14] Thus, any claims against absent class members are permissive, rather than compulsory. Accordingly, we hold that counterclaims pertaining to absent class members cannot properly be brought before the Court, irrespective of whether they are asserted as part of the case-in-chief or during the claims

---

[13] *See generally Allapattah Services, Inc. v. Exxon Corp.*, 157 F.Supp.2d 1291, 1323 (S.D.Fla. 2001) (*aff'd, Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611 (2005)); *see also Arctic Express*, 238 F.Supp.2d 963, 967-68; and *Donson Stores, Inc. v. American Bakeries Co.*, et al., 58 F.R.D. 485, 489-90 (S.D.N.Y. 1973).

[14] The Court notes that other courts have established even broader findings in stating that all individual class members serve as a non-parties to the litigation. *See Donson Stores*, 58 F.R.D. at 489; *see also Allapattah*, 157 F.Supp.2d at 1323. In contrast, we do not adopt the broad finding that individual class members, in general, are non-parties to the litigation, but rather limit that finding in the instant case by distinguishing between individual named class members and absent class members.

administration proceedings, unless a separate basis for jurisdiction over those counterclaims exists.  Though we adopt the findings of the *Allapattah* court that "claims against individual class members could be asserted at the damages phase of the case on a class member-by-class member basis," and, further, that "the appropriate time to assert counterclaims against individual class members is during the damages phase of the case,"[15]  these findings do not confer upon a defendant the absolute right to assert counterclaims at such time, but rather must be considered in conjunction with an inquiry into whether appropriate jurisdictional requirements have been met.[16]

Though the parties do not address the jurisdictional basis for Mayflower's counterclaims, the Court deems it prudent to do so at this time, so as to avoid any unnecessary confusion or dispute in the future.[17]   In the instant actions, Mayflower's counterclaims against absent class members (as well as all class members generally) relate to the individual class members' purported breaches of contract.  As those counterclaims arise under state law rather than federal law, Mayflower is precluded from asserting federal question jurisdiction over those claims, and

---

[15]*Allapatah*, 157 F.Supp.2d at 1323 (internal citations omitted).

[16]We note, however, the proposition set forth by other courts that "an exception to the rule requiring an independent basis for jurisdiction over permissive counterclaims exists when the counterclaims do not seek affirmative damages, but instead seek only to diminish the amount of the plaintiffs' recovery by way of set-off." *See Allapatah*, 157 F.Supp.2d at 1322; *see also Arctic Express*, 238 F.Supp.2d at 968.  Thus, to the extent that Mayflower intends to assert defensive set-offs against currently absent individual class members (once they have been identified) during the claims administration proceedings, the Court, without examination of the jurisdictional bases for said set-offs, will allow those set-offs to remain as asserted within the pleadings, with consideration of said set-offs to be deferred until claims administration.

[17]Plaintiffs generally assert that absent class members are not parties to the pending actions, without analyzing further the significance of their assertion and/or the jurisdictional issues that arise if, in fact, absent class members are non-parties.  Pls' Reply to Mayflower's Opp. To Mot. for J. on Pleadings Dismissing Countercls. Belonging to Mayflower's Agents at p. 12 (stating "In fact, in this case it results in the presentation of claims on behalf of a non-part against a non-party.").

instead must establish an alternative jurisdictional basis for bringing those claims before the

Court.  In examining similar jurisdictional issues, the Court in *Arctic Express* held that "federal

jurisdiction is proper only if the Defendants can establish the necessary amount in controversy

and diversity of jurisdiction that is required by 28 U.S.C. § 1332."[18]  We hold, to the contrary, that

the counterclaims asserted by Mayflower find a jurisdictional basis under 28 U.S.C. § 1367, the

statute pertaining to the availability of supplemental jurisdiction,[19] and, thus need not delve into

the inquiry required in examining diversity jurisdiction and/or otherwise question the parties'

domiciles or the amount in controversy unless supplemental jurisdiction is found to be

unavailable or the Court otherwise declines to exercise supplemental jurisdiction.

The Court, in examining the pleadings, finds that Mayflower's asserted counterclaims

arise out of the very same contractual relationships and/or mutual obligations arising thereunder,

forming the basis of Plaintiffs' claims against Mayflower, including but not limited to Plaintiffs'

own breach of contract claims against Mayflower.  In *Channell v. Citicorp Nat. Services, Inc.*, 89

F.3d 379, the Seventh Circuit, in remanding the case to the Northern District of Illinois Court,

provided a detailed analysis of the application of 28 U.S.C. § 1367 in the context of a class action.

---

[18]*Arctic Express*, 238 F.Supp.2d at 968.  The Court notes that the *Arctic Express* court chose not to engage in any analysis of supplemental jurisdiction despite the existence of 28 U.S.C. § 1367.

[19]More specifically, we rely upon 28 U.S.C. § 1367(a), which states:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same cause or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The class action in *Channell*, similar to the class actions in the instant suits, arose under the federal-question jurisdiction of 28 U.S.C. § 1331. *Id.* at 384. In examining supplemental jurisdiction over a creditor's counterclaims against class members terminating leases, the Seventh Circuit determined that "the parties, the lease, the clause, and even the terminations are constants . . . " and, therefore, held that the counterclaims fell "within the outer boundary of § 1367(a)." *Id.* at 385-86. The Seventh Circuit clarified that the analysis of supplemental jurisdiction remains more complicated than that single determination, however, delving into a lengthy discussion of 28 U.S.C. § 1367(c), which provides four bases for a district court to decline to exercise supplemental jurisdiction. *See generally, id.* at 386-87; see also 28 U.S.C. § 1367(c). The Seventh Circuit identified two bases potentially applicable to the determination of whether to exercise supplemental jurisdiction under the circumstances in *Channell*, and we, likewise, find those two bases potentially applicable to our determination today.[20] In examining § 1367(c), the two potential bases for us to decline exercise of supplemental jurisdiction are as follows: when "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," or "in exceptional circumstances, [when] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(2) and (4).

To some extent, Plaintiffs' briefs contend that allowing Mayflower's counterclaims defeats the purpose of the Leasing Regulations; we consider that contention to be related, at most, to 28 U.S.C. §1367(c)(4). As discussed *supra*, however, the Court finds that allowing Mayflower to assert counterclaims does not defeat the purpose of the Leasing Regulations or discourage

---

[20]It is a well-established principle that the decision to accept or decline to exercise supplemental jurisdiction over a claim lies within the discretion of the district courts. 28 U.S.C. § 1367(c); *see also Channell*, *supra,* 89 F.3d at 307.

owner-operators from seeking enforcement of those regulations.  Furthermore, the Court, though fully supportive of appropriate enforcement of the Leasing Regulations, cannot accept that enforcement of those regulations goes hand-in-hand with tolerating Plaintiffs' avoidance of their own alleged debts.  The mere fact that an owner-operator may be held accountable for his own legal debts during the course of seeking enforcement of the Leasing Regulations does not persuade us that allowing counterclaims for such debts will endeavor to discourage owner-operators from seeking enforcement of those regulations in the future.  The Court, therefore, finds that no exceptional circumstances exist to compel us to decline exercise of supplemental jurisdiction.

In analyzing §1367(c)(2), the other potentially feasible means of declining supplemental jurisdiction in the instant suits, the Court must consider whether Mayflower's counterclaims may substantially predominate over Plaintiffs' claims providing the Court with original jurisdiction over these actions.  While acknowledging that considerable time may be spent calculating the alleged sums due Mayflower under each class member's lease and adjudication of those individual class members' defenses, we fail to conclude that Mayflower's counterclaims substantially predominate over Plaintiffs' claims.  The Court will still be able to determine Mayflower's liability as to the named Plaintiffs and the class as a whole, in regard to the leasing regulations.  Furthermore, the Court, in adjudicating Plaintiffs' claims that Mayflower improperly withheld funds and breached the individual lease agreements, will be required during the claims administration proceedings to examine each lease agreement and/or engage in calculations

pertaining to each lease itself to determine amounts purportedly due those class members.[21]  At such time as the individual absent class members assert their claims for damages against Mayflower, the parties to the action will be more fully identified and liability (if any) as to the class and the individual class members will have been established.  The consideration of Mayflower's counterclaims and/or set off/recoupment defenses can likewise occur during the claims administration process.  Therefore, we feel compelled to mention that it remains possible that Plaintiffs, at the cessation of many years worth of litigation, may end up prevailing on their claims that Mayflower breached the Leasing Regulations, but will recover nothing and/or walk away from the proceedings owing a judgment to Mayflower for amounts due under the contracts.


IV.  *Conclusion.*

For the reasons set forth above, the Plaintiffs have failed to successfully demonstrate that they are entitled to judgment on the pleadings as to Mayflower's counterclaims against the Plaintiffs (whether named or currently absent), when said counterclaims were raised by Mayflower on behalf of its agents.  Consideration of those counterclaims, however, will be deferred until the claims administration proceedings, prior to which a liability determination will have been made and the absent class members identified via their filing for recovery of damages. Accordingly, Plaintiffs' Motion for Judgment on the Pleadings is **DENIED** in its entirety.

---

[21]The Court notes that any potential argument to be made by Plaintiffs against our exercise of supplemental jurisdiction over Mayflower's counterclaims on the basis of the amount of time and/or resources that would be necessarily be expended in adjudicating Mayflower's counterclaims would likewise cut against Plaintiffs' own assertion of supplemental jurisdiction over their own breach of contract claims.

ENTERED  06/27/2006


_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

**Joseph Albert Black**

THE CULLEN LAW FIRM PLLC

jab@cullenlaw.com

**James Albert Calderwood**

ZUCKERT SCOUTT & RASENBERGER

jacalderwood@zsrlaw.com

**David C. Campbell**

BINGHAM MCHALE LLP

dcampbell@binghammchale.com lcase@binghammchale.com

**David J. Carr**

ICE MILLER LLP

carr@icemiller.com ross@icemiller.com;cassie.lowry@icemiller.com

**David Aaron Cohen**

THE CULLEN LAW FIRM PLLC

dac@cullenlaw.com

**Paul Damien Cullen, Sr**

THE CULLEN LAW FIRM PLLC

pdc@cullenlaw.com

**James M. Hinshaw**

BINGHAM MCHALE LLP

jhinshaw@binghammchale.com lcase@binghammchale.com

**Martha S. Hollingsworth**

BINGHAM MCHALE, LLP

mhollingsworth@binghammchale.com cbennett@binghammchale.com

**Michael J. Morris**

THOMPSON COBURN LLP

mmorris@thompsoncoburn.com bcavins@thompsoncoburn.com


**Rebecca A. Pinto**

THOMPSON COBURN LLP

rpinto@thompsoncoburn.com

**David Wells**

THOMPSON COBURN LLP

dwells@thompsoncoburn.com srayphole@thompsoncoburn.com

**Margaret Dewey Weilenberg**

ICE MILLER LLP

margaret.weilenberg@icemiller.com janie.ross@icemiller.com